IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD ADRIN GRAY,

*Petitioner,*

vs.

Case No. 18-03305-EFM

CAROLINE HORTON,
Colonel; Commandant of the United States
Disciplinary Barracks in Ft. Leavenworth,

*Respondent.*

**MEMORANDUM AND ORDER**

In 1988, a general court-martial convicted Petitioner Ronald Adrin Gray of multiple specifications of attempted murder, premeditated murder, rape, larceny, robbery, forcible sodomy, and burglary and sentenced him to death.[1] Petitioner then pursued review of his convictions and sentence through direct review in the military courts.[2] After the United States Supreme Court denied Petitioner's petition for writ of certiorari, the Judge Advocate General transferred Petitioner's case to the Secretary of the Army and then to the Department of Justice for review and clemency consideration and, in July 2008, the President of the United States approved

---

[1] *United States v. Gray*, 37 M.J. 730, 733 (A.C.M.R. 1992) (*Gray I*).

[2] *Id.* See also *United States v. Gray*, 37 M.J. 751 (A.C.M.R. 1993) (*Gray II*); *United States v. Gray*, 51 M.J. 1 (C.A.A.F. 1999) (*Gray III*), *cert. denied* 532 U.S. 919 (2001).

Petitioner's death sentence.[3] The Secretary of the Army scheduled Petitioner's execution, but just over two weeks before his execution date, Petitioner filed with this Court a motion to stay the execution so he could file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[4] The Court granted the stay on November 26, 2008.[5]

Petitioner filed his habeas petition on April 1, 2009;[6] the respondent filed his response on May 1, 2009[7]; and Petitioner filed his traverse on December 18, 2009[8]. Because the Court then granted Petitioner leave to amend and supplement his petition to raise additional issues not raised until his traverse, the Court granted the respondent leave to file a response to the traverse, which the respondent did on November 1, 2010.[9] In the response to the traverse, the respondent argued that some of Petitioner's newly raised claims had not been exhausted in the military courts.

On February 11, 2011, Petitioner returned to the military courts and filed in the United States Army Court of Criminal Appeals (ACCA) a petition for extraordinary relief in the nature of a writ of coram nobis, raising seven claims ("the coram nobis claims").[10] Petitioner notified this Court of the coram nobis proceedings and periodically filed status reports with this Court. In January 2012, the ACCA denied Petitioner's request for coram nobis relief, noting six threshold requirements Petitioner was required to meet to obtain coram nobis relief:

---

[3] See *Gray v. Belcher*, 70 M.J. 646, 647 (A.C.C.A. 2012) (*Gray IV*).

[4] *Id.*; see also *Gray v. Belcher*, Case No. 08-cv-3289-JTM, Doc. 2 (2008 Habeas).

[5] *Id.* at Doc. 7.

[6] *Id.* at Doc. 17.

[7] *Id.* at Doc. 20.

[8] *Id.* at Doc. 42.

[9] *Id.* at Docs. 47 and 48.

[10] *Id.* at Docs. 51-1 and 51-2; *Gray IV*, 70 M.J. at 646.

"(1) the alleged error is of the most fundamental character; (2) no remedy other than *coram nobis* is available to rectify the consequences of the error; (3) valid reasons exist for not seeking relief earlier; (4) the new information presented in the petition could not have been discovered through the exercise of reasonably diligence prior to the original judgment; (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and (6) the sentence has been served, but the consequences of the erroneous conviction persist."[11]

Because Petitioner had filed for habeas relief in this Court, the ACCA held that he could not meet the second threshold requirement and denied the petition for coram nobis relief, stating: "The merits of petitioner's claims are now for the federal district court, rather than this court, to decide."[12] Petitioner filed a writ-appeal petition for review in the United States Court of Appeals for the Armed Forces (CAAF) and on April 17, 2012, the CAAF summarily denied the writ-appeal petition "without prejudice to raising the issue asserted after the U.S. District Court for the District of Kansas rules on the pending habeas petition."[13] Petitioner returned to this Court and filed his reply to Respondent's response to the amended petition in November 2012.[14]

In November 2014, Petitioner's case was reassigned to then-Chief Judge J. Thomas Marten. After holding a lengthy status conference in April 2015, Judge Marten issued a detailed dispositive memorandum and order in September 2015. Highly summarized, the memorandum and order denied most of Petitioner's assignments of error because the military courts had afforded

---

[11] *Gray IV*, 70 M.J. at 647 (quoting *Denedo v. United States*, 66 M.J. 114m 126 (C.A.A.F. 2008)).

[12] *Gray IV*, 70 M.J. at 648.

[13] Daily Journal, 71 M.J. 300 (C.A.A.F. 2012).

[14] 2008 Habeas, Doc. 69.

those issues full and fair consideration.  Regarding the coram nobis claims, Judge Marten noted the problem inherent in the military courts denying coram nobis relief because Petitioner could pursue habeas relief in this Court: "For those issues that were not first presented to the military courts, this court assigns procedural default and, absent a showing of cause and actual prejudice, must dismiss the claims."[15]  Although federal district courts are "empowered to" review de novo claims that military courts "manifestly refused to consider,"[16] Judge Marten declined to review the coram nobis claims de novo because of federal courts' well-established history of affording great deference to military courts and historical preference for allowing military courts the first opportunity to address military prisoners' post-conviction arguments.  Accordingly, Judge Marten dismissed the coram nobis claims without prejudice.  Judge Marten also denied Petitioner's jurisdiction-based argument on its merits and deemed Petitioner's challenge to the anticipated manner of execution as waived for failure to raise it to the military courts.

In February 2016, Petitioner filed a second petition for coram nobis relief in the ACCA, raising the same claims as he raised in his first coram nobis petition.  Two days later, he appealed Judge Marten's judgment to the United States Court of Appeals for the Tenth Circuit.  On April 8, 2016, the Tenth Circuit reversed and remanded because federal district courts faced with habeas petitions that contain both exhausted and unexhausted claims may not enter "a hybrid disposition of the petition, dismissing with prejudice all exhausted claims and dismissing without prejudice the unexhausted claims."[17]  Within a week, the respondent in Petitioner's second coram nobis action moved the ACCA to dismiss the petition filed therein because the Tenth Circuit remand had

---

[15] *Id.*, Doc. 90, p. 52.

[16] *Id.* (quoting *Burns v. Wilson*, 346 U.S. 137, 142 (1953)).

[17] *Gray v. Gray*, 645 Fed. App'x 624, 626 (10th Cir. 2016).

returned the federal habeas case to this Court, leaving the respective courts in the same positions as when the military courts denied Petitioner's first petition for coram nobis relief.

Back in this Court, on May 3, 2016, Judge Marten vacated his prior memorandum and order as directed by the Tenth Circuit and ordered the parties to show cause why he should not dismiss the petition without prejudice in its entirety. One week later, the ACCA granted the respondent's motion and dismissed Petitioner's second petition for coram nobis relief. Petitioner filed a writ-appeal petition in the CAAF and, in June 2016, the CAAF once again denied the writ-appeal petition "without prejudice to refiling after the United States District Court for the District of Kansas rules on the pending petition for writ of habeas corpus."[18] Judge Marten received responses to the order to show case and, in accordance with Petitioner's wishes, dismissed the petition without prejudice in its entirety in October 2016.[19]

In December 2016, Petitioner filed his third petition for a writ of coram nobis or, in the alternative, a writ of habeas corpus, with the ACCA, again raising the same seven claims. In an opinion dated May 9, 2017, the ACCA held that it lacked jurisdiction to grant a writ of habeas corpus, so it considered the petition as one seeking coram nobis relief only.[20] The ACCA further held that it lacked jurisdiction to consider whether appellate counsel had been ineffective at the CAAF "and beyond."[21] Turning to the coram nobis claims over which it had jurisdiction, the ACCA once again held that Petitioner could not meet the second threshold requirement for coram nobis relief; this time, however, the ACCA also noted that Petitioner could not meet the third

---

[18] Daily Journal, 75 M.J. 368 (C.A.A.F. 2016).

[19] 2008 Habeas, Doc. 111.

[20] *Gray v. United States*, 76 M.J. 579, 581-82 (A.C.C.A. 2017) (*Gray VI*).

[21] *Id.* at 589.

requirement—that valid reasons existed for not seeking relief earlier—or the sixth requirement—that his sentence has been served but the consequences of an erroneous conviction persist.[22] Even though the ACCA recognized "the claim-transcendent and dispositive third and sixth factors," it nevertheless found it "appropriate to more specifically address petitioner's claims."[23] After doing so, the ACCA rejected each of Petitioner's claims.

Petitioner appealed to the CAAF, which held that it lacked jurisdiction to consider "a request for coram nobis in a case that is final in all respects under the UCMJ."[24] It continued, however, to hold that "[e]ven assuming that this Court has jurisdiction to issue the requested writ, [Petitioner] fails to show that he is entitled to extraordinary relief," because he had an alternative remedy available—"a writ of habeas corpus in the Article III courts"—and because he was incarcerated.[25] The ACCA concluded: "[I]n light of the lack of jurisdiction, the writ-appeal is dismissed with prejudice."[26]

This brings us to the petition for writ of habeas corpus currently before the Court, which Petitioner filed in December 2018. Therein, he alleges 19 claims of error related to his court-martial convictions and sentence. Respondent filed her Response in December 2019 and Petitioner filed his Reply in November 2020. In January 2021, the Court held a status conference at which counsel for Petitioner and Respondent appeared. At that hearing, the parties agreed that the threshold question before the Court is whether to grant Petitioner's request for an evidentiary

---

[22] *Id.* at 588-89.

[23] *Id.* at 589.

[24] *United States v. Gray*, 77 M.J. 5, 6 (C.A.A.F. 2017) (*Gray VII*).

[25] *Id.*

[26] *Id.*

hearing on certain claims, specifically Claims 7, 10, and 11. These claims, along with Claims 15, 16, and 17[27], were raised in Petitioner's most recent petition for writ of error coram nobis in the military courts.

The Court has reviewed the parties' arguments on the necessity of an evidentiary hearing and concludes that oral argument from the parties will aid the Court in determining whether such a hearing is necessary. Accordingly, the Court will contact counsel to set a status hearing.

The Court requests that the parties focus their attention and preparation for this status hearing on the propriety of holding an evidentiary hearing in this case. Petitioner should be prepared to tell the Court generally what evidence he anticipates presenting if granted an evidentiary hearing and to explain the relevance of that evidence to the issues before the Court. In addition, the Court requests that the parties prepare to argue regarding the following topics and specific questions:

**I.     Claim 7: "Petitioner was denied his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments when he was tried while incompetent to proceed and when he was incompetent during portions of the appellate proceedings; the trial court and appellate courts erred in not conducting competency proceedings; and prior counsel were ineffective in investigating and litigating Petitioner's incompetence"[28]**

---

[27] In Claim 15, Petitioner asserts that he "was denied his rights to due process, to a fair sentencing proceeding, to a public trial, and against cruel and unusual punishment, as guaranteed by the Fifth, Sixth, and Eighth Amendments, where the President, acting in a judicial role, approved Petitioner's death sentence in reliance upon confidential, undisclosed reports." (Doc. 1, p. 162.) In Claim 16, Petitioner argues that "[t]he military death sentencing system as applied is unconstitutional where Petitioner's death sentence resulted from racial discrimination, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments." *Id.* at 170. In Claim 17, Petitioner argues that "[t]he military death penalty violates evolving standards of decency under the Eighth Amendment. *Id.* at 177.

[28] Doc. 1, p. 76.

1. Once the sanity boards concluded that Petitioner was competent to participate in his defense during court-martial and on direct review, under which provision or provisions of military law could court-martial counsel and appellate counsel have sought an adversarial hearing on Petitioner's competency?

2. Did Petitioner's claim to the CAAF in 1994 during the military courts' mandatory review that court-martial counsel was ineffective for "fail[ing] to conduct a reasonable investigation" into whether Petitioner "suffered from a mental disease or defect, organic brain damage, alcoholism, or a severely dysfunctional family background"[29] encompass the arguments currently made in Claim 7 or Claim 11?

3. What legal authority allows this Court to consider evidence regarding Petitioner's competency that was not presented to the military courts and was not known at the time of the court-martial and military-court mandatory review?

    **II.     Claim 10: "Appellate counsel rendered ineffective assistance in investigating and presenting available mitigating evidence, and in litigating trial counsel's ineffectiveness at the sentencing phase"[30]**

1. Petitioner asserts that "[n]umerous courts have recognized that a petitioner may raise for the first time – after his case becomes final – ineffective assistance claims against counsel who represented the petitioner in prior, simultaneous appeal and habeas proceedings to which the right to effective assistance of counsel attached."[31]  Do any federal cases, particularly within

---

[29] See 2008 Habeas, Doc. 20-16, p. 124-25, 129; *Gray III*, 51 M.J. at 18-19 (rejecting argument).

[30] Doc. 1, p. 101

[31] Doc. 1, p. 102, n. 26.

the Tenth Circuit, apply this proposition in the context of a federal habeas court reviewing a court-martial conviction?

### III.  Claim 11: "Petitioner was denied his Sixth Amendment right to effective assistance of counsel at his capital sentencing proceeding"[32]

1. Claim 11 raises the issue of whether counsel at sentencing provided effective assistance as guaranteed by the Sixth Amendment to the United States Constitution.  Petitioner claims that "the factual basis for this claim was developed by federal habeas counsel after the conclusion of the military appeal," so it is a different claim than the ineffective assistance of sentencing counsel claims already rejected by the military courts.[33]  How does the factual basis of Claim 11 differ from the factual bases for the claims of ineffective assistance of sentencing counsel that the military courts have already decided?  When was this factual basis developed?

2. Do any federal cases, particularly within the Tenth Circuit, apply this distinction to a change in the factual basis for ineffective assistance of counsel claims in the context of federal habeas review of court-martial convictions?

### IV.  Scope of Review

1. Petitioner requested that this Court exercise de novo review in his 2008 habeas proceeding[34] and in a Memorandum and Order dated September 20, 2015, the Court denied that request.[35]  In the pleadings currently before this Court, Petitioner has made the same arguments in favor

---

[32] Doc. 1, p. 134.

[33] Doc. 1, p. 144.

[34] 2008 Habeas, Doc. 42, p. 15-39.

[35] See *Id.* at Doc. 90.

of de novo review.[36] Has there been a change in the law that should persuade the Court to reconsider its prior ruling regarding the appropriate standard of review in this case?

2. In May 2017, the ACCA determined that Petitioner could not satisfy all six prerequisites for a successful petition for coram nobis relief, but it nevertheless addressed the majority of Petitioner's issues on their merits.[37] Petitioner filed a writ-appeal petition in the CAAF, but the CAAF held it lacked jurisdiction over the matter and dismissed the writ-appeal petition with prejudice.[38] Does the CAAF's ruling vacate the findings of the ACCA or should this Court afford deference to the ACCA's findings on the merits of Petitioner's claims?

3. Is Petitioner requesting an evidentiary hearing on any claims other than Claims 7, 10, and 11? If so, how will that request remain viable if the Court concludes that it should adhere to the traditional scope of review over court-martial proceedings and determine only whether the military courts gave claims full and fair consideration?

### V. Waiver

1. "A federal habeas court will not review a petitioner's claims if they were not raised at all before the military courts."[39] Similarly, in federal habeas review of state-court convictions, habeas claims must have been fairly presented to the state courts.[40] Does the fair-presentment requirement apply when a federal habeas court reviews court-martial convictions? If the Court

---

[36] Compare *Id.* with Doc. 1, p. 3-26.

[37] *Gray VI*, 76 M.J. at 587-94.

[38] *Gray VII*, 77 M.J. at 6.

[39] *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986).

[40] See *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding that the fair presentation required for federal habeas review of state-court proceedings does not occur if "the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor").

agrees with Petitioner that the CAAF's jurisdictional holding in the most recent coram nobis proceedings invalidated the underlying ACCA opinion[41], did Petitioner waive the coram nobis claims by only raising them to the military courts at a time when the military courts lacked jurisdiction to consider them?

2. In light of the sixth threshold requirement military courts apply to petitions for writ of error coram nobis—that the petitioner's sentence has been served[42]—did Petitioner's death sentence bar him as a matter of law from obtaining coram nobis relief in the military courts?

3. Could Petitioner have raised his ineffective assistance of trial counsel claims on direct review by requesting a *DuBay* hearing[43]?

4. In December 2005, the CAAF distinguished the concept of Article 76 finality—"the point at which military court judgments become final and requires that they be given res judicata effect"—from the point at which there is "a final judgment as to the legality of the proceedings" under Article 71(c).[44]  It held that a military death sentence becomes ripe for presidential approval when direct review is complete and the case is final under Article 71(c), but the death sentence is not final under Article 76 until the President approves it.[45]  During the period between Article 71(c) finality and Article 76 finality, the military appellate courts have "collateral review jurisdiction" to consider a petition for writ of habeas corpus.[46]  Petitioner's

---

[41] See Doc. 28, p. 4 ("[T]he clear import of CAAF's ruling was that the entire military court system lacked jurisdiction over Mr. Gray's coram nobis claims.").

[42] See *Denedo v. United States*, 66 M.J. 114, 125-26 (CAAF 2008), *aff'd* 556 U.S. 904 (2009).

[43] See *United States v. Scott*, 24 M.J. 186 (U.S. Ct. of Military Appeals 1987) (deciding ineffective assistance of counsel claim during direct review).

[44] *Loving v. United States*, 62 M.J. 235, 242 (C.A.A.F. 2005).

[45] *Id.* at 244.

[46] *Id.* at 236.

case became final under Article 71(c) in 2001 but the President did not approve his death sentence until July 2008.  Once the CAAF made clear in 2005 that it had collateral review jurisdiction over cases in a procedural posture such as Petitioner's, could Petitioner have raised the current Claims 7, 10, 11, 15, 16, and 17 in the ACCA or the CAAF through a petition for writ of habeas corpus filed before July 2008?

5. If this Court deems Petitioner's coram nobis claims waived for failure to raise them to the military courts, what is Petitioner's argument on the cause and prejudice required[47] for this Court to reach them?

Although the Court will not entertain written briefing in response to these questions, the Court requests that if either party is or becomes aware of a case that is directly on point to a question identified above, that party inform the Court, in writing, of the case citation at least two business days prior to the hearing.

**IT IS SO ORDERED.**

Dated this 4th day of June, 2021.

ERIC F. MELGREN
U. S. District Judge

---

[47] See *Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir.  2003) ("If a ground for relief was not raised in the military courts, then the district court must deem that ground waived.  The only exception to the waiver rule is that a petitioner may obtain relief by showing cause and actual prejudice.").